# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

No. 22-1485V

| | |
|---|---|
| KRYSTLE MILLER,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: January 9, 2026 |

*Walter Nalducci, Cutruzzula and Nalducci, Pittsburgh, PA,* for Petitioner.

*Adam Nemeth Muffett, U.S. Department of Justice, Washington, DC,* for Respondent.

### **DECISION DISMISSING CLAIM**[1]

On October 11, 2022, Krystle Miller filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a right shoulder injury related to vaccine administration ("SIRVA") caused-in-fact by an influenza ("flu") vaccine administered on October 28, 2021. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find Petitioner has not established that she suffered the residual effects of her injury for more than six months, and therefore dismissal of the claim is warranted.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.    **Relevant Procedural History**

On May 17, 2024, Respondent filed a Rule 4(c) Report opposing compensation, on the grounds Petitioner cannot meet the Act's severity requirement. ECF No. 35 at 9-11.[3] On October 25, 2024, Petitioner filed a Motion for a Ruling on the Record. Petitioner's Motion for Ruling on the Record ("Mot."), ECF No. 37. Respondent opposed the motion on November 8, 2024, reiterating arguments set forth in the Rule 4(c) Report. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 38. Petitioner filed a reply on November 15, 2024. Petitioner's Response to Respondent's Request for Dismissal ("Reply"), ECF No. 41. The matter is ripe for resolution.

II.   **Relevant Factual History**

Petitioner received a flu vaccine in her left arm on October 28, 2021. Ex. 1 at 2. Three days later, she saw Dr. Joseph Pietropaoli complaining of shoulder pain. Ex. 2 at 50.[4] Dr. Pietropaoli noted that Petitioner brought a picture that showed some redness around the injection site, and that the injection was given in the posterior of her shoulder. *Id.* An examination showed full range of motion, no signs of impingement, but tenderness in Petitioner's shoulder. She was diagnosed with left shoulder pain "post flu shot". *Id.* at 51.

On November 8, 2021, Petitioner returned to Dr. Pietropaoli reporting continued left shoulder pain. Ex. 2 at 44. A physical examination showed full range of motion, normal strength, no swelling or redness, but "some mild tenderness in the posterior aspect." *Id.* at 44-45. Petitioner then saw nurse practitioner ("NP") Linsay Angus on November 10, 2021, to establish care. Ex. 9 at 2. Included with her present illnesses, Petitioner reported an "injury to the left shoulder after getting [her] flu vaccine." *Id.*

On November 19, 2021, Petitioner again complained of left shoulder pain "after having a flu shot done on 10/28/21." Ex. 2 at 36. An examination produced normal results, with full range of motion and strength "except for internal rotation." *Id.* On November 29, 2021, Petitioner complained of continued shoulder pain that was now "radiating to the midarm and occasionally to the axilla." *Id.* at 22.

---

[3] Respondent did not address the remaining merits of this case because "the six-month issue...is dispositive". Report at 2 n.2. Respondent requested the opportunity to file a supplemental Rule 4(c) Report if needed. *Id.*

[4] Records from this visit initially referenced an injury in the right shoulder. However, most of the references to right shoulder are edited with a handwritten interlineation that crosses out the word "right" and inserts an "L" in a circle. Ex. 2 at 50-51. Physician assistant ("PA") James Mendillo, PA-C, signed the records on November 8, 2021, and Dr. Pietropaoli signed them on November 11, 2021. *Id.* at 51.

Petitioner underwent an MRI on December 2, 2021 (ex. 2 at 12-13), that was reviewed on December 6th. Ex. 4 at 19. At that time, Petitioner had a full range of motion and no impingement signs. *Id.* at 21. At a follow-up on December 23, 2021, Petitioner stated she still had soreness with internal rotation, but that her pain was decreasing. *Id.* at 16. At another follow-up on January 21, 2022, Petitioner reported she had been completing her home exercise program and experienced improvement. *Id.* at 12. However, she still was experiencing some dull aching pain. *Id.*

Petitioner began physical therapy on January 24, 2022. Ex. 4 at 37. She stated she was placed on work restrictions, however she received "clearance by her orthopedist to return to full activity with restrictions as of Friday." *Id.* at 38. An examination showed reduced range of motion and positive impingement signs. *Id.* at 37.

On February 1, 2022, Petitioner saw Dr. Raymond Drabicki for continued left shoulder pain. Ex. 6 at 4. Dr. Drabicki noted that Petitioner showed full range of motion and strength, and that the MRI "demonstrated normal-appearing cuff and labrum." *Id.* She received a corticosteroid injection at that time. *Id.* at 5. Petitioner returned to Dr. Drabicki on March 1, 2022, reporting "excellent relief with corticosteroid." *Id.* at 7. Further, she recently had "a little bit of discomfort mainly with forward elevation of 90 degrees is very minor very livable she feels like things are continuing to improve." *Id.*

Petitioner was discharged from physical therapy on March 29, 2022, having met all her goals. Ex. 4 at 33, 36. At that time she reported no pain at rest with minimal discomfort during certain activities.

On May 10, 2022, Petitioner saw NP Carmen Gyne. Ex. 12 at 18. Numerous issues were discussed, including ovarian cysts, thyroid issues, and shoulder pain. With regard to her shoulder, NP Gyne noted that Petitioner had developed pain, swelling, and redness following a flu vaccine. *Id.* at 20. However, she "had steroid injection and it finally resolved". *Id.* Petitioner saw NP Gyne again on November 14, 2022 for a follow-up. *Id.* at 24. No shoulder problems were noted or discussed at that time.

Petitioner saw William Bergin, D.O., for a one-year functional follow-up on February 9, 2023 (notably, after this claim was filed), related to her prior shoulder injury. She now reported shoulder pain, exhibited a mild tenderness, and slight reduced range of motion. Ex. 10 at 2, 4; Ex. 7 at 125. Petitioner was advised to avoid repetitive resistance lifting exercises and overhead activities. Ex. 7 at 125. No additional treatment was provided or sought regarding Petitioner's shoulder pain.

3

Petitioner attended an annual check-up on July 26, 2023. Ex. 12 at 31. No shoulder problems were noted or discussed at that time.

Petitioner filed an affidavit in support of her claim on November 15, 2024. Ex. 14. She stated that her pain "never fully resolved" and that she continues to suffer. Further, she states that she continued with a home exercise routine "for a number of months, until the problems were not getting any better…" *Id.* at 2. Petitioner also asserts that she left her job due to the restrictions and physical limitations of her shoulder injury. *Id.*

Jacob Miller, Petitioner's husband, also submitted an affidavit in this case. Ex. 15. He states that Petitioner carried out a home exercise program for "a number of months until her symptoms necessitated getting further treatment in February of 2023…." *Id.* at 2.

### III.   Legal Standard

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

In particular, a petitioner must establish that she suffered an injury meeting the Table criteria (*i.e.* a Table injury), in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. If a petitioner establishes a Table injury the burden shifts to respondent to establish a more likely alternative cause. Section 13(a)(1)(A), 11(c)(1)(C)(i), 14(a). If a petitioner cannot establish a Table injury, or she may pursue causation-in-fact under the legal standard set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F. 3d 1274, 1278 (Fed. Cir. 2005).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a).

In addition to causation, a petitioner must also meet the requirements establishing that the vaccine received is "covered" by the Program, the duration and severity of petitioner's injury, and the lack of other award or settlement.[5] With regard to severity, a

---

[5] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited

petitioner must show that she suffered the residual effects or complications of her injury or condition for more than six months after the administration of the vaccine. § 11(c)(1)(D)(i); *see Song v. Sec'y of Health & Hum. Servs.,* 31 Fed. Cl. 61, 65-66 (1994), aff'd, 41 F.3d 1520 (Fed. Cir. 2014) (noting that a petitioner must demonstrate the six-month severity requirement by a preponderance of the evidence). Finding that petitioner has met the severity requirement cannot be based on petitioner's word alone, though a special master need not base their finding solely on medical records. *Section* 13(a)(1); *see Colon v. Sec'y of Health & Hum. Servs.*, 156 Fed. Cl. 534, 541 (2021). Severity must be established regardless of whether the claim arises under the Table or is a causation-in-fact claim.

## ANALYSIS

The parties dispute whether Petitioner has demonstrated that she suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

Because Petitioner received the flu vaccine on October 28, 2021, she must demonstrate by preponderant evidence that her residual symptoms continued at least through April 28, 2022 (assuming onset of pain the day of vaccination). *See, e.g., Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record in this matter establishes that Petitioner treated for approximately five months. While Petitioner sought prompt treatment for her initial pain in the fall of 2021, by March 1, 2022, she was reporting "excellent relief" following a corticosteroid injection. Ex. 6 at 7. Further, on March 29, 2022 (five months post-vaccination), Petitioner was discharged from physical therapy having met all her goals. Ex. 5 at 3-4. At that time, she reported no pain, had full strength, and minimal discomfort. *Id.* And on May 10, 2022 (six months and twelve days post vaccination), Petitioner reported that although she developed pain following a flu shot, but that she "had steroid injection and it finally resolved." Ex. 12 at 20.

---

exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

There are subsequently no medical records containing reference to shoulder pain for ten months, or until February 9, 2023. Ex. 10 at 2. Petitioner does not provide an explanation as to why she did not seek formal treatment until then, only attesting that she performed an at-home exercise program, and that her position as a licensed physical therapist allowed her to treat at home without taking "additional time off work to attend therapy." Ex. 15 at 2. Additionally, there is no reference to additional treatment or shoulder pain after February 9, 2023. *See* Ex. 12 at 31 (annual check-up on July 26, 2023, with no reference to shoulder pain).

Thus, as Respondent argues, the evidence only demonstrates a short period of limited treatment that led to improvement by March 2022 – with no clear plan to continue treatment or records of lingering symptoms. This was followed by a ten-month gap in reporting shoulder pain (between March 2022 through February 2023), which is only referenced in a single record (based on a medical encounter that occurred after this action had begun). That record does not indicate Petitioner should seek any further treatment, and it does not appear that she did.

The record, therefore, does not preponderantly establish that Petitioner's injury persisted for the six months required by the Act.

## Conclusion

Because Petitioner has failed to meet the severity requirement set forth in Section 11(c)(1)(D)(i), Petitioner cannot establish entitlement, and therefore I must **DISMISS** her claim in its entirety. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk of Court shall enter judgment in accord with this Decision.[6]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.